# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | | |
|---|---|---|
| ERIC JOSEPH DEMOLLE | * | CIVIL ACTION NO. 15-0229 |
| VERSUS | * | MAGISTRATE JUDGE WHITEHURST |
| COMMISSIONER OF SOCIAL SECURITY | * | BY CONSENT OF THE PARTIES |

## REASONS FOR JUDGMENT

The undersigned was referred this social security appeal by consent of the parties.

For the reasons set forth below, the Commissioner's decision is **AFFIRMED**, and this

action is **DISMISSED WITH PREJUDICE**.

## I. Background[1]

Eric Joseph DeMolle ("DeMolle"), born in 1959, filed applications for a period of

disability, disability insurance benefits and supplemental security income on March 7,

2012, alleging disability as of January 9, 2010, due to back, shoulder, knee and hand

problems, loss of hearing in the left ear, trouble sleeping, depression, and hearing voices.

(Tr. 64).[2]

DeMolle had completed the ninth grade.  (Tr. 40).  He had a limited education and

---

[1]Although all of the medical records were reviewed by the undersigned, only those relating to the arguments raised by the parties are addressed herein.

[2]DeMolle acquired sufficient quarters of coverage to remain insured through December 31, 2014.  (Tr. 16). Thus, he must establish disability on or before that date.  *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir.1990).

was able to communicate in English using simple words.  (Tr. 27, 40).  He had worked as a boat captain until 2009, when he tested positive for marijuana.  (Tr. 27, 192, 223, 368).  He reported that he could not work because of his uncontrolled diabetes, weakness and left knee swelling.  (Tr. 40-41, 54).

DeMolle was six feet tall and weighed 205 pounds.  (Tr. 40).  He had lost over 80 pounds because of diabetes.  (Tr. 39).  He was living with his girlfriend, who was disabled and getting a widow's pension.  (Tr. 39-40).  He received unemployment benefits until 2011.  (Tr. 40).

Regarding his mental impairments, claimant reported that he heard voices, saw shadows, and was depressed.  (Tr. 42, 49-50).  He testified that his medications helped his depression.  (Tr. 42, 51).  He said that he did not have any side effects from his medications.  (Tr. 42).

Claimant stated that he had trouble affording his diabetic medications and testing strips, even though he was treated at UMC for no cost.  (Tr. 48-49).  He also reported that a case worker provided transportation to the doctor for his mental problems.  (Tr. 53).

As to activities, claimant testified that he did a little bit of household chores.  (Tr. 43).  He made coffee, took care of the dog, mowed the lawn with a riding mower, watched a lot of TV, cooked, washed clothes, swept and mopped.  (Tr. 43-44).  He did not have a driver's license.  (Tr. 40).

DeMolle reported that he smoked 10 cigarettes a day.  (Tr. 46).  He had not used

alcohol since his overdose.

Regarding limitations, DeMolle testified that he could lift about 15 pounds. (Tr. 47). He could sit all day, but could stand for only 15 minutes because it felt "like needles sticking underneath." He said that he could walk about 100 yards.

The medical records show that on January 9, 2010, DeMolle was admitted to Abbeville General Hospital after overdosing on Benzodiazepines, Methadone and alcohol. (Tr. 337, 368, 427-32). His Global Assessment of Functioning ("GAF") score was 25 on admission, and 65 in the past year. (Tr. 431).

After his recovery, DeMolle was transferred to a psychiatric ward from January 22-28, 2010, with a diagnosis of major depressive disorder, opiate polysubstance dependency, and noncompliance with medication and treatment. (Tr. 432-578). His GAF score on discharge was 45. (Tr. 442).

On August 29 2010, claimant presented to University Medical Center ("UMC") with suicidal ideations. (Tr. 322). He was transferred to the mental hospital in Bogalusa for a week of inpatient psychiatric care. (Tr. 323, 368, 771-75). Dr. George Diggs, Jr. provided follow-up care at Tyler Mental Health Center ("TMHC"). (Tr. 411-13). DeMolle's GAF score on September 21, 2010, was 50. (Tr. 413).

On November 9, 2010, DeMolle complained of anxiety, lack of motivation, depression and hearing voices. (Tr. 410). He reported that he would like to work, but was unable to find employment. He denied side effects or current suicidal or homicidal

3

ideations.

On January 4, 2011, DeMolle reported to Dr. Glenn Ally at TMHC that he was doing extremely well, and feeling better than he had in years.  (Tr. 407).  He admitted taking some of his wife's medication.  Dr. Ally cautioned him about taking other people's medication.

On February 19, 2011, Eric R. Cerwonka, Psy.D., conducted a consultative evaluation of DeMolle at the request of Disability Determination Services ("DDS").  (Tr. 367-71).  Claimant reported that his memory was "gone" since he was in the hospital. (Tr. 367).  He reported that he had worked as a boat captain until taking an overdose of narcotics in 2010.  (Tr. 368).  However, the records indicated that DeMolle had lost his captain's license at least a year before due to drug use.  He had an extensive history of drug dependency, including loss of employment, drug-seeking behavior at the local emergency rooms, and overdose.

DeMolle's medications included Mirtazapine, Buspirone, Risperidone and Bupropion XL.  He also took Nitrostat sublingual for fluid build-up around his heart and angina.

On examination, DeMolle's mood ranged between euthymic and mildly depressed, and his affect was mildly restricted.  He denied both homicidal and suicidal ideation.  He reported that he had one year of sobriety after a long history of substance abuse.  He denied auditory or visual hallucinations, but did describe instances in which he heard

4

what sounded like people talking.  His thinking was organized and goal-directed with no evidence of loose associations, tangential or circumstantial thought processes.

DeMolle was capable of standing for short periods, sitting, walking short distances, bathing, grooming, dressing, shopping, driving and performing light household chores.  (Tr. 369).  He also stated that he was incapable of lifting or cooking, which differed from his hearing testimony.

DeMolle's remote memory was intact, and his demonstrated recent recall was fair. Attention and concentration skills were fairly good, pace was fair, and persistence was good.  Estimated intelligence was in the low average to average range.  Insight and judgment appeared fair.

Cognitive/Modified Mini Mental State Exam showed that while DeMolle might suffer from some deficits in his frontally mediated cognitive skills, these deficits were mild, and would not be expected to prevent him from working.

Dr. Cerwonka's diagnostic impression was substance-induced mood disorder, polysubstance dependence, and low average to average intelligence.  (Tr. 370). Claimant's GAF score was 70.

Dr. Cerwonka stated that claimant had maintained his sobriety for a year, and his polysubstance dependence would not be expected to prevent him from working.  He had

5

experienced a fair effect from his current medication regimen, and his substance-induced disorder would not prevent him from working.

Similarly, DeMolle had no intellectual limitations or cognitive deficits that would prevent him from working. During the examination, he was able to understand, retain, and follow instructions, and was able to sustain enough concentration and attention to perform both simple and moderately complex tasks. Dr. Cerwonka believed that claimant was able to relate well to others on a one-to-one basis. As such, he had no psychiatric, cognitive, or behavioral problems which would prevent him from engaging in some type of regular, full-time work.

On March 3, 2011, DeMolle reported to TMHC that his goal was to find a job, as his unemployment benefits were running out. (Tr. 405). His frustration level increased as he was unable to find a job.

On April 1, 2011, DeMolle told Dr. Ally that he had applied for jobs at Wal-Mart, Lowe's and other places, as well completing online job applications at the library. (Tr. 403). He enjoyed working in the garden he had planted at home. He reported that Buspar was helping him, but wore off too quickly.

On October 28, 2011, DeMolle admitted to not taking his medications because he was unable to buy them. (Tr. 374). He complained of shakiness, hearing voices, and poor sleeping patterns, but denied suicidal thoughts. He impression was major depressive

6

disorder, single episode, severe with psychotic features, and polysubstance dependence. His GAF score was 50.

On November 8, 2011, claimant stated that he was doing better.  (Tr. 396).  He had been using his wife's medications.  He became angry about not having Klonopin.

On January 10, 2012, claimant told Dr. Diggs that he was doing well.  (Tr. 392). He stated that he had looked for jobs and sent in 44 applications.  His speech and affect were normal, and he denied suicidal ideation.  His auditory hallucinations had decreased.

On March 7, 2012, DeMolle admitted to increased appetite, not exercising, impaired concentration, forgetfulness, impaired sleep with frequent awakening, decreased energy and occasional auditory hallucinations.  (Tr. 389).  On mental status exam, he was alerted and oriented x 3 and had normal speech and affect, even smiling at times.

On April 4, 2012, claimant admitted to Dr. Diggs that he simply did not want to work.  (Tr. 681).  He requested an increase in his medications.  By May 2, 2012, he had decided to focus again on improving his life by exercising and getting his boat captain's license back.  (Tr. 683).  His mood was stable.

The State agency psychologist, Cathy Castille, Ph.D., completed a Psychiatric Review Technique ("PRT") on April 25, 2012.  She found that claimant had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties is maintaining concentration, persistence or pace, and one or two repeated episodes of decompensation.  (Tr. 78).

In the Mental Residual Functional Capacity ("MRFC") Assessment, Dr. Castille determined that DeMolle was moderately limited in his ability to carry out detailed instructions and maintain attention and concentration for extended periods. (Tr. 81). She opined that DeMolle was able to carry out simple instructions and familiar detailed instructions, but might have difficulty with more complex tasks. (Tr. 82). She found that his ability to maintain attention to perform simple repetitive tasks for two-hour blocks of time was "limited by his depressive symptoms."

Dr. Castille further opined that DeMolle's ability to relate to others, including supervisors and co-workers, was not impaired. (Tr. 82). She also found that his ability to tolerate the stress and pressure associated with day-to-day activity and demands was fair.

Dr. Kenneth A. Ritter performed a consultive physical examination on May 16, 2012. (Tr. 419). DeMolle complained of low back, knee and shoulder pain, intermittent hand swelling and pain, poor hearing in the left ear, and a history of depression and hearing voices. He saw no regular physicians, and was followed up by a psychiatric clinic only. His medications included Amitriptyline, Risperdal, Bupropion, and Remeron.

On examination, claimant walked slowly using a cane, stating that it helped his knee and low back. (Tr. 420). He would not lie down for the examination because of his back. However, he was able to sit on the exam table with his legs out at 90 degrees without problems.

8

Claimant's knees had full range of motion, but the left knee had a positive bulge sign.  (Tr. 421).  He had a trace of right ankle swelling.  Neurologically, he was intact.

Dr. Ritter's impressions were significant obesity; complaints of chronic lower back pain with an essentially negative back exam; positive bulge sign in the left knee with some degree of degenerative joint inflammation, and a history of mental problems but normal mentally on examination.

In the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Ritter found that claimant could lift/carry 10 to 25 pounds occasionally and frequently.  (Tr. 422).  His ability to stand/walk and sit was not affected by his impairment.  He could occasionally climb, stoop, kneel, crouch, and crawl, and occasionally to frequently balance.

On January 9, 2013, claimant continued to complain of depression and difficulty sleeping.  (Tr. 670).  His social worker at TMHC encouraged him to exercise, follow a diabetic diet and increase his activities.  DeMolle had a good affect, with some smiling and laughing.

On May 20, 2013, DeMolle presented at UMC with complaints of hearing voices and believing people were watching him.  (Tr. 667-68, 686).  He was transferred to MMO Westend Hospital ("Westend") on May 21, 2013.  (Tr. 734).  Prior to admission, claimant had stopped taking his medications for a week.. A week later, DeMolle was discharged from Westend with a GAF score of 20 on admission and 55 on discharge.  (Tr. 735).

9

## II. Law and Opinion

On appeal, DeMolle argues that: (1) the ALJ improperly evaluated the medical opinions of the State agency psychological consultant, Dr. Castille, and (2) the ALJ improperly evaluated the medical opinions of his treating psychologists.

## A. State Agency Psychologist's Opinion

DeMolle first asserts that the ALJ improperly evaluated the opinions of the State agency psychologist, Dr. Castille.

In the Decision, the ALJ found Dr. Castille's opinion to be well-supported by the evidence, and gave it significant weight.  (Tr. 20).  However, claimant agues that the ALJ should have included the portion of Dr. Castille's opinion that his "ability to maintain attention to perform simple, repetitive tasks for two hour blocks of time is limited by his depressive symptoms."  (Tr. 70).

The Social Security Regulations provide that state agency medical consultants are considered as experts in Social Security evaluation and their findings must be treated as expert opinion evidence:

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges *must* consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are

disabled (see § 404.1512(b)(8)).

(emphasis added).  20 C.F.R. § 404.1527(e)(2)(i); 20 C.F.R. 416.927(e)(2)(i); *see also*

SSR 96-6p (July 2, 1996) ("[f]indings of fact made by State agency medical and

psychological consultants and other program physicians and psychologists regarding the

nature and severity of an individual's impairment(s) must be treated as expert opinion

evidence of nonexamining sources at the administrative law judge and Appeals Council

levels of administrative review.").

    Although the ALJ did not perform a detailed analysis based on 20 C.F.R. §§

404.1527(c) and 416.927(c),[3] she did not have to do so because Dr. Castille was a *non-*

*examining, non-treating* source.  *Robinson v. Astrue*, 271 F. App'x. 394, 396 (5th Cir.

2008) (*citing Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)); *Ciccotti v. Astrue*, 2010

WL 3022775, at *9 (W.D. Tex. July 28, 2010) (the ALJ was not required to conduct a

six-factor test to weigh the medical opinions of non-treating doctors because the doctors

were not treating doctors); *Locure v. Colvin*, 2015 WL 1505903, at *13 (E.D. La. Apr. 1,

2015) (although the ALJ must articulate the weight given to medical opinions, a recount

of specific findings is not necessary if the ALJ shows he considered the medical

findings.).

    The record reflects that the ALJ properly considered Dr. Castille's opinion

regarding DeMolle's mental impairment.  Although the ALJ omitted discussion of her

---

[3]Due to the 2012 amendments to the regulations, the factors previously listed at 20 C.F.R. § 404.,1527(d) and 416.927(d) are now found at 404.1527(c) and 416.927(c).

opinion as to his limited ability to maintain attention to perform simple, repetitive tasks for two hour blocks of time due to his depressive symptoms, the ALJ specifically cited Dr. Castille's findings that claimant's ability to relate to others was not impaired, and that his ability tolerate the stress and pressure associated with day-to-day work was fair.[4]  (Tr. 24, 71).  Regarding claimant's ability to maintain attention to perform tasks, she relied on the finding of Dr. Cerwonka, an examining physician, who opined that claimant was able to "sustain enough concentration and attention to perform both simple and moderately complex tasks."  (Tr. 24, 370).  It is well established that an examining source's opinion is generally entitled to more weight than the opinion of a nonexamining source. 20 C.F.R. § 404.1527(c)(1); *Foreman v. Commissioner of Soc.*, 2014 WL 691599, at *11 (W.D. La. Feb. 20, 2014).

DeMolle further argues that he was prejudiced by the ALJ's failure to consider this portion of Dr. Castille's opinion, as the VE had testified that a claimant who had such a limitation for 20% of the workweek would be unable to maintain any employment.[5]  (Tr.

---

[4]The ALJ also gave significant or great weight to Dr. Castille's opinions that claimant had a mild restriction in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation of extended duration.  (Tr. 20-21).

[5]The hypothetical was as follows:

Q:  "[I]f we had an individual limited to light work, whose ability to maintain attention to perform simple, repetitive tasks for two-hour blocks of time is limited by his depressive symptoms for 20 percent of the work week, would he be able to do his prior relevant work or any other work in the economy?"

A, "No."  (Tr. 60).

60-61).[6]   However, it is well established that the  ALJ is not bound by VE testimony

which is based on evidentiary assumptions ultimately rejected by the ALJ.  *See Owens v.*

*Heckler*, 770 F.2d 1276, 1282 (5th Cir.1985); *Bayer v. Colvin*, 557 F. App'x. 280, 287

(5th Cir. Feb. 12, 2014).  Here, claimant's attorney had the opportunity to incorporate all

of the limitations asserted by claimant.  As the hypothetical to the vocational expert

reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the

claimant or her representative had the opportunity to correct any deficiencies, the ALJ's

findings are entitled to deference.  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001);

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

## B. Treating Psychiatrists' Opinions

Next, DeMolle argues that the ALJ erroneously omitted consideration of consistent

GAF scores of 50 by his treating psychiatrists, Drs. Legnon, Ally and Diggs.

It is well established that the opinion of a treating physician who is familiar with

the claimant's impairments, treatments and responses, should be accorded great weight in

determining disability.  *Newton*, 209 F.3d at 455; *Greenspan v. Shalala*, 38 F.3d 232, 237

(5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

A treating physician's opinion on the nature and severity of a patient's impairment

will be given controlling weight if it is "well supported by medically acceptable clinical

---

[6] To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result.  *Jones v. Astrue*, 691 F.3d 730, 735 n. 8 (5th Cir. 2012).

and laboratory diagnostic techniques and is not inconsistent with  . . .  other substantial evidence." *Newton*, 209 F.3d at 455.

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status.  *Id*.  The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  *Id*.

Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.  *Id.*; *Greenspan*, 38 F.3d at 237.

Here, claimant argues that the ALJ omitted consideration of consistent GAF scores of 50 by his treating psychologists.  However, a review of the decision reflects that the ALJ specifically addressed claimant's GAF score of 55 from his treatment providers at Westend.  (Tr. 23).  In analyzing this score, the ALJ stated as follows:

> Though GAF score assessments are not dispositive of the disability issue, a score in the range of 51 to 60 is indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  It does not suggest the inability to obtain or maintain full-time employment, as the inability to keep a job is offered as an example of functioning for an individual with a score in the range of 41 to 50.  A score at the top of the 51 to 60 range certainly does not suggest the inability to get or keep a job.

(Tr. 23-24).

14

The ALJ also cited Dr. Cerwonka's opinion, in which he estimated DeMolle's GAF score to be 70.  (Tr. 24).  She  observed that a score in the range of 61 to 70 "is indicative of some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but an individual with a score in this range is generally functioning pretty well and has some meaningful interpersonal relationships."  (Tr. 24).  She noted that this assessment was consistent with Dr. Cerwonka's statements that DeMolle had no intellectual limitations, cognitive deficits, or psychiatric or behavioral problems which would keep him from performing regular, full-time work.  She found Dr. Cerwonka's opinion to be well-supported by the record, and gave it significant weight.

To the extent claimant is asserting that his GAF scores should be given controlling weight, the court notes that the Commissioner has determined that GAF scores do not have a "direct correlation to the severity requirements of the mental disorders listings." *Miller v. Colvin*, 2016 WL 1178391, at *5 n. 12 (M.D. La. Feb. 25, 2016), *report and recommendation adopted sub nom. Cynthia Claire Miller v. Carolyn W. Colvin*, 2016 WL 1223232 (M.D. La. Mar. 24, 2016) (*citing* 65 Fed.Reg. 50,746, 50,765-66 (Aug. 21, 2000)).[7]  Courts have reasoned that "it would be an error for an administrative law judge

---

[7] The GAF scale is no longer included in the DSM-V.  *Spencer v. Colvin*, 2016 WL 1259570, at *6 (W.D. Tex. Mar. 28, 2016); *Locure*, 2015 WL 1505903, at *10 ("both the American Psychiatric Association and the Commissioner have recently decided that GAF scores are not helpful in either medical or disability decision-making.") *White v. Colvin*, 2013 WL 4413335, at *1 (S.D. Tex. Aug. 12, 2013).  However, the SSA published internal instructions regarding how to continue interpreting GAF scores that appear in medical records, noting that such scores should be treated as opinion evidence.  *Jackson*, 2015 WL 7681261 at *3.

to focus on a doctor's assessed GAF scores, rather than the doctor's findings and opinions, to credit or discredit medical evidence.  Simply put, an administrative law judge cannot draw a reliable inference from a single GAF score, standing alone." *Id.* (*citing Locure*, 2015 WL 1505903, at *11).

Instead of viewing GAF scores as absolute determiners of the ability to work, ALJs should make disability determinations on a case-by-case basis, considering the entire record. *Jackson v. Colvin*, 2015 WL 7681262, at *3 (N.D. Tex. Nov. 5, 2015) *report and recommendation adopted*, 2015 WL 7582339 (N.D. Tex. Nov. 25, 2015) (*citing Petree v. Astrue*, 260 F. App'x 33, 42 (10th Cir. 2007) ("a low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."); *Holmes v. Astrue*, 2009 WL 3190466, at *12 (S.D. Tex. Sept. 30, 2009) ("Although GAF scores are not determiners of an ability to work, the ALJ properly considered the scores along with the rest of the medical evidence in reaching his determination that [claimant] could perform her past relevant work")).

It is within the ALJ's province to resolve conflicts when an assigned GAF score by a treating source conflicts with the treating source's own descriptions of the patient's mental symptoms and/or function. *Jackson*, at *3 (*citing Locure*, 2015 WL 1505903 at *9).  Even if an ALJ mischaracterizes what a GAF score represents, any error is harmless so long as there is other substantial evidence in the record supporting the ALJ's

16

determinations and it is clear that such errors did not alter the result.  *Id*. (*citing Hardy v. Astrue*, 2009 WL 2777167, at *4 (W.D. La. Aug. 31, 2009)).

Here, claimant argues that the ALJ "improperly focuses on a single GAF score of 55" from Westend.  The record reflects, however, that she also considered the GAF score of 70 estimated by Dr. Cerwonka.[8]  [rec. doc. 10, p. 10; Tr. 24].  She found that his estimated GAF score was consistent with his statements regarding DeMolle's ability to perform the mental demands of work.  Specifically, she cited Dr. Cerwonka's findings that claimant had no intellectual limitations, cognitive deficits, or psychiatric or behavioral problems which would prevent him from from engaging in some type of regular, full-time work.  (Tr. 370).  Additionally, she noted Dr. Cerwonka's opinion that claimant was able to understand, retain, and follow instructions, sustain enough concentration and attention to perform both simple and moderately complex tasks, and relate well to others on a one-to-one basis.

It is well established that "the ALJ has sole responsibility for determining a claimant's disability status."  (emphasis added).  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (*citing Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).  Whether an impairment is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.

---

[8]The Commissioner concedes that the ALJ did not address claimant's GAF scores of 50 between 2010 and 2013. B [rec. doc. 12, p. 6].  However, because there is other substantial evidence in the record supporting the ALJ's decision and this omission did not alter the result, this error is harmless.  *Jackson*, 2015 WL 7681262, at *3.

2001); *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir.1991).  Further, the ALJ is free to reject the opinion of any expert when the evidence supports a contrary conclusion.  *Id*. Thus, it was within the province of the ALJ to give greater weight to Dr. Cerwonka's opinion than those of Drs. Legnon, Ally and Diggs.

Further, the ALJ noted that no treating source had provided an opinion regarding DeMolle's ability to perform the mental demands of work.  The record confirms that no physician who examined claimant pronounced him disabled.  *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (substantial evidence supported ALJ's finding that claimant's subjective symptomology not credible when no physician on record stated that claimant was disabled).  As the ALJ's finding is supported by substantial evidence, it is entitled to deference.

Based on the foregoing, the Commissioner's decision is **AFFIRMED** and this action is **DISMISSED** with prejudice.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**